Fred **WILLIAMS, Jr.**,
Plaintiff-Appellant,

v.

Russell W. **GRABER** and Markline Industries, Inc., Defendants-Appellees.

No. 3–1284A338.

Court of Appeals of Indiana,
Third District.

Dec. 3, 1985.

walk on the highway at the curve and that his patrol car, after he had stopped it, started sliding down the grade of the curve.

John J. Gaydos, Elkhart, for plaintiff-appellant.

R. Michael Parker, Barnes & Thornburg, Elkhart, Richard A. Cohen, Barnes & Thornburg, Indianapolis, for defendants-appellees.

GARRARD, Judge.

Fred Williams, Jr. (Williams) initiated this negligence action against Russell W. Graber (Graber) and Graber's employer, Markline Industries, Inc. for damages stemming from a collision between the vehicles driven by Williams and Graber on December 20, 1978. The collision occurred in Van Wert County, Ohio on U.S. 30, a four-lane divided highway, when Williams attempted to pass Graber on a banked curve. Graber was travelling in the right hand lane but crossed the "centerline" just before Williams, who was attempting to pass in the left hand lane, began to overtake him. Graber contended that Williams was contributorily negligent in attempting to pass because of the hazardous highway conditions.

Williams testified that the road was wet but not icy at the time of the accident. Graber, on the other hand, indicated that the road was ice-covered at the time of the accident. Sergeant Louis Hohman (Hohman) of the Ohio State Highway Patrol testified, over Williams' objection, that the weather condition in the area between 12:00 midnight and 12:30 a.m. on the night of the accident was freezing rain.[1] Hohman further testified that when he arrived at the scene of the accident, some twenty to thirty minutes after it occurred, the road was ice covered, that he was unable to

The case was tried before the court without the intervention of a jury on March 14 and 15, 1984. At the close of all the evidence Williams moved to have the trial court take judicial notice of the laws of Ohio as governing the disposition of this case. The trial court determined that Williams' motion should be treated as a motion to amend the pretrial order in which there had been no indication that the law of another state should be applied to this action. Graber objected to this attempt to have the substantive law of Ohio govern as untimely and prejudicial.

The trial court denied the motion to amend the pretrial order, applied the substantive law of Indiana and found that Graber had succeeded in proving his defense of contributory negligence. Williams appeals from the judgment against him raising in essence three separate issues for review:

1. Did the trial court err by denying Williams' motion to amend the pretrial order and apply the substantive law of Ohio?

2. Did the trial court err by permitting Sergeant Hohman to testify concerning the weather and road conditions on the night of the accident?

3. Did the trial court err in finding that Williams' excessive speed for the road conditions was a contributing factor to the accident?

*Issue One*

It is within the sound discretion of the trial court to permit or deny amendment of the pretrial order. The trial court should amend or modify the pretrial order when requested if modification is necessary to prevent manifest injustice. Indiana

---

1. Hohman's definition of freezing rain indicated that it was "rain which was freezing when it hit." The accident occurred at 12:05 a.m.

Rules of Procedure, Trial Rule 16(J). In our review of the trial court's decision to permit or to deny modification, we are limited to the determination as to whether the trial court abused its discretion. *Dominguez v. Gallmeyer* (1980), Ind.App., 402 N.E.2d 1295, 1299; *Colonial Mortgage Company of Indiana, Inc. v. Windmiller* (1978), 176 Ind.App. 535, 376 N.E.2d 529. *See also Whisman v. Fawcett* (1984), Ind., 470 N.E.2d 73, 76–7 (discussing the role of the pretrial order in the adjudicatory process). Furthermore, as Judge Robertson indicated in *Indiana-Kentucky Electric Corp. v. Green* (1985), Ind.App., 476 N.E.2d 141, at 148:

"In deciding whether to permit an amendment, the trial court should consider the danger of surprise or prejudice to the opposing party and the goal of doing justice to the merits of the claim."

In denying Williams' motion to amend the pretrial order, the trial court gave the following rationale:

"DECREE

This cause was tried to the Court without the intervention of a jury and subsequent to the trial of the cause parties filed briefs with respect to the motion of the plaintiff to amend the pre-trial order and to have the trial of this cause governed by the substantive law of the State of Ohio. The Court having reviewed the briefs herein now denies the plaintiff's motion to amend the pre-trial order and orders that this cause be governed by the substantive law of the State of Indiana.

It is clear that the provisions of the Uniform Judicial Notice of Foreign Law Act, Indiana Code Annotated Section 34–3–2–1 *et. seq.* cover the issue in question. In reviewing the pleadings filed with this cause, the Court now finds that the plaintiff has not complied with the requirements of subsection 4 of said chapter. Reasonable notice was not given to the adverse parties at any time prior to the second day of trial of this cause. That the plaintiffs were requesting the Court to either take judicial notice of the laws

of the State of Ohio with respect to comparative negligence, or that said issue would in fact be part of the instant litigation."

The trial court based its decision on the language of the Uniform Judicial Notice of Foreign Law Act, Section 4, IC 34–3–2–4 (West 1983), which reads:

"Sec. 4. Any party may also present to the trial court any admissible evidence of such laws, but, to enable a party to offer evidence of the law in another jurisdiction or to ask that judicial notice be taken thereof, *reasonable notice* shall be given to the adverse parties either in the pleadings or otherwise." (emphasis added)

The trial judge indicated that Williams had failed to give "reasonable notice ... to the adverse parties" as required by IC 34–3–2–4. Our review of the cases involving reasonable notice under IC 34–3–2–4 has convinced us that the trial court did not abuse its discretion.

Cases finding that reasonable notice under IC 34–3–2–4 was not given include: *Fardy v. Mayerstein* (1943), 221 Ind. 339, 47 N.E.2d 966 (in denying rehearing Supreme Court indicated that there was no notice in the record whatsoever of appellant's desire to have the law of Massachusetts applied to determine the validity of a public sale); *Jameson Chemical Co., Ltd. v. Love* (1980), Ind.App., 401 N.E.2d 41, *modified in other respects* 403 N.E.2d 928 (reference to foreign law made fifteen (15) days after trial in plaintiff's proposed findings of fact and conclusions of law neither properly nor timely raised any choice of law question); *Suyemasa v. Myers* (1981), Ind.App., 420 N.E.2d 1334 (appellee cited trial court to Tennessee statutes of limitation but made no offer of evidence as to Tennessee's substantive law on contracts nor was trial court asked to take judicial notice of Tennessee contract law); *In re Marriage of Mulvihill* (1984), Ind.App., 471 N.E.2d 10 (appellee's reference to Michigan law regarding oral trusts made nineteen (19) days after trial in a post trial brief not in compliance with IC 34–3–2–4.)

Cases finding that reasonable notice under IC 34–3–2–4 had been given include: *Revlett v. Louisville & N.R. Co.* (1943), 114 Ind.App. 187, 51 N.E.2d 95 (plaintiff's complaint for personal injuries indicated that the train-car accident occurred in Kentucky and that the law of Kentucky was applicable); *Collins v. State* (1981), 275 Ind. 86, 415 N.E.2d 46 (State introduced Arizona statute as part of case against defendant as an habitual criminal; State had indicated potential use of the statute during discovery and supplied defense with copy of an exhibit containing the information charging defendant with violating the Arizona statute); *Yurina v. State* (1985), Ind., 474 N.E.2d 93 (defendant had notice that prior Utah conviction was to be introduced during habitual criminal phase of trial; as an alternative the Supreme Court said the jury could have determined whether defendant's crime in Utah was a felony under the definition thereof in Indiana statutes.)

Although none of these cases deal directly with the question of whether notice of intent to use foreign law given during trial is reasonable, it is clear from the *Revlett, Collins* and *Yurina* cases that the emphasis lies upon notice occurring prior to trial. In *Collins,* the Arizona statute was introduced at trial but it was the State's notification during discovery and the State's supplying the charging information raising the Arizona statute to the defense *before* trial that convinced our Supreme Court that defendant had received reasonable notice under IC 34–3–2–4. Similarly in *Revlett* plaintiff's *complaint* contended that Kentucky law was applicable.

Other jurisdictions which have enacted the Uniform Judicial Notice of Foreign Law Act have determined that the reasonable notice provision of the Act is not complied with when the attempt to involve the foreign law is not made until trial has begun. *Bailey v. Hagen* (1964), 25 Wis.2d 386, 130 N.W.2d 773 (defendant's attempt to invoke Illinois law for the first time after the close of plaintiff's case rejected for failure to provide reasonable notice); *American Physicians Insurance Co. v.* *Hruska* (1968), 244 Ark. 1176, 428 S.W.2d 622 (defendant requested trial court to apply foreign law at the close of all evidence; in reviewing trial court's denial the Arkansas Supreme Court indicated that notice as to the applicable foreign law should be given before trial is undertaken). Finally, the following purpose and illustration has been attached to the notice requirement under the UJNFLA:

"The reasons given by the commissioners for the requirement of notice are that in those states in which the rule of pleading prevails if a foreign law is relied upon it must be pleaded the other party gets notice from the pleading, while in the states where the pleading rule does not obtain, without the requirement of notice opponent would not be warned beforehand that the court may take judicial notice of foreign law and might not be able to prepare himself on that law. This point is illustrated in the commissioners' notes by the following example: 'If a plaintiff sued in Minnesota for damage done to freight by a railroad, and on the trial the plaintiff invokes the law of Illinois because the bill of lading was issued in Illinois, and if the plaintiff is ready with books of Illinois law, it is unfair to the opponent not to have given him notice that the Illinois law will be relied upon.' "

Annot., 23 A.L.R.2d 1437, 1449.

▪ In the case at bar Graber's primary defense was that of contributory negligence. Under that theory all Graber had to show to defeat Williams' negligence claim was that Williams was guilty of negligence that contributed proximately to cause the collision. *Huey v. Milligan* (1961), 242 Ind. 93, 175 N.E.2d 698; *Koroniotis v. LaPorte Transit, Inc.* (1979), Ind. App., 397 N.E.2d 656. Under the State of Ohio's statutory comparative negligence scheme, however, Graber would have to show that Williams' negligence was greater than his own to completely defeat recovery. Ohio Rev. Code Ann., Section 2315.-

19(A)(1) (Page 1981).[2] Furthermore, Graber correctly points out that under Ohio's comparative negligence statute if Williams were to recover, the damages awarded would be reduced by an amount proportional to Williams' negligence and that the precise degree of each party's negligence therefore becomes paramount. Ohio R.C.A., Section 2315.19(A)(1). It seems obvious then that the trial preparation and strategy of Graber would be significantly altered were he reasonably notified of Williams' desire to have the substantive law of Ohio applied.

■ Williams notified Graber's attorney and the trial judge of his intention to move the court to judicially notice the Ohio comparative negligence law during the morning of this trial's second and final day, just before Graber was scheduled to present his defense. Williams' timing left Graber's counsel no opportunity to map out a new trial strategy or consider a settlement after reflecting upon the effect that an application of a comparative negligence system would have upon his case *and* still be able to present his defense that day.

Furthermore, the Ohio legislature enacted Ohio's comparative negligence statute effective June 20, 1980. The statute gave no indication of retroactive effect and the Ohio Supreme Court initially interpreted the statute to have prospective effect only for claims arising after June 20, 1980. *Viers v. Dunlap* (1982), 1 Ohio St.3d 173, 438 N.E.2d 881. On August 3, 1983, however, the Supreme Court of Ohio in *Wilfong v. Batdorf* (1983), 6 Ohio St.3d 100, 451 N.E.2d 1185, at 1189 reversed itself, holding that the statute would be given retroac-

tive effect to cover any case *tried* after June 20, 1980. The *Wilfong* case preceded the trial of this case by over seven months. Hence, the situation here is not such that Williams could not have discovered the existence of the *Wilfong* decision until the second and last day of trial; rather the decision was available seven months prior to the trial in this case.

■ Williams erred in failing to exercise due diligence and uncover the *Wilfong* decision and its ramifications upon his case sooner. The trial court's refusal to amend the pretrial order, in effect, denied shifting the burden of hardship of Williams' error to Graber. The danger of surprise and prejudice to Graber thus notified of the motion to apply Ohio law on the day he was prepared to present his defense under Indiana's contributory negligence doctrine, outweighs any rationale for allowing an amendment of the pretrial order. *Indiana-Kentucky Electric Corp. v. Green, supra.*[3]

■ Williams also contends that the law of Ohio should govern matters of substantive law because Indiana recognizes the doctrine of *lex loci delicti* when a conflict of law question is presented in an action. We do not dispute that under the doctrine of *lex loci delicti* the location of the tort will determine the substantive law to be applied when a conflict of law question is raised. *Lee v. Lincoln Nat. Bank & Trust Co.* (1983), Ind.App., 442 N.E.2d 1147. A prerequisite to the application of this doctrine, however, is that a choice of law question be properly and timely raised. *Jameson Chemical Co., Ltd. v. Love* (1980), Ind.App., 401 N.E.2d 41, 45 (*mod-*

---

**2.** Section 2315.19(A)(1) provides in pertinent part:

"In negligence actions, the contributory negligence of a person does not bar the person or his legal representative from recovering damages that have directly and proximately resulted from the negligence of one or more other persons, if the contributory negligence of the person bringing the action was greater than the combined negligence of all other persons from whom recovery is sought. However, any damages recoverable by the person bringing the action shall be diminish-

ed by an amount that is proportionally equal to his percentage of negligence...."

**3.** We note that a continuance *could* serve to remedy the surprise to a party where an attempt is made during trial to have the substantive law of another state applied. The record here does not reflect any request by either party nor any offer of a continuance by the trial court. On the other hand, we need not ignore the fact that when the trial is convened and the witnesses are at hand, a continuance may represent a hollow remedy for lawyer and litigant alike.

*ified in other respects* 403 N.E.2d 928). A party must properly and timely raise the conflict of law issue to defeat the presumption that the law of the sister state is the same as the law of Indiana. *Harvest Ins. Agency v. Inter-Ocean Ins. Co.* (1985), Ind. App., 478 N.E.2d 98, 106; *County of Ventura, State of Cal. v. Neice* (1982), Ind. App., 434 N.E.2d 907, 912; *Ingleheart Bros., Inc. v. John Deere Plow Co.* (1943), 114 Ind.App. 182, 51 N.E.2d 498. The trial court did not abuse its discretion in denying Williams' motion to amend the pretrial order to apply the substantive law of Ohio as untimely by reason of failing to provide reasonable notice under IC 34–3–2–4.

*Issue Two*

Williams asserts that the trial court erred by permitting Ohio State Police Officer Hohman to testify as to the weather and road conditions on the night of the accident. When Hohman was asked to describe the weather conditions from midnight to 12:30 a.m. on the night in question, Williams' attorney requested a voir dire of the witness and eventually made the following objection:

"Mr. Wicks: Then we would have to object to his testimony, Your Honor. He can't testify as to road conditions at the time of the accident."

Graber's attorney responded:

"Mr. Marr: Your Honor, I didn't ask him to describe the road conditions, I asked him to describe the weather at the time he was travelling there and between that time period which is the time period which is relevant."

When Hohman was later asked to describe the road conditions as he drove to the accident, Williams' attorney again objected that such testimony was irrelevant and immaterial. The trial court overruled both objections and allowed Hohman to testify.

Williams' contention on appeal is that the trial court erred in allowing Hohman to testify as to the weather and road conditions and that the trial court abused its discretion by finding that the road conditions Hohman described existing 25 min-

utes after the accident were the same at the time of the accident. Contrary to Williams' contention the trial court made no specific finding as to the road condition at the scene of the accident but rather summarized the testimony of those describing the road conditions as follows:

"With respect to the evidence in this cause *there is a substantial dispute with respect to the road conditions at the time of the accident.* The plaintiff testified that while it was raining heavily he had sufficient traction to operate his motor vehicle on the highway and that the cause of the accident was careless driving on the part of the defendant. The [defendant's] State Police Officer testified that the roads were ice covered and hazardous to the extent that a motor vehicle would slide sideways when parked upon the incline of the curve. The defendant testified that the roads were extremely icy and hazardous and that as a result thereof he was able to drive at only 20 miles per hour." (emphasis added)

The only finding the court made with regard to the road conditions at all was stated in this fashion:

"Based upon the testimony provided by the parties, the photographs introduced into evidence, and the Court's belief that the plaintiff's excessive speed for the road conditions were a contributing factor to the accident in question Court now finds that the defendant has [carried] its requisite burden with respect to the affirmative defense of contributory negligence and therefore finds for the defendant and against the plaintiff, enters a judgment for the defendant and against the plaintiff...."

It was clear from the testimony of Hohman that he was not at the scene of the accident until 25 minutes after it occurred and that his description of the road conditions on the curve was heard with that caveat firmly in mind. Since the trial court made no finding as to the road conditions at the curve either at the time of the accident or at any

other time, there is no finding upon which the court abused its discretion.

Therefore, Williams' objections to Hohman testifying at all with respect to weather and road conditions on the night in question go only to the testimony's admissibility. In *Spears v. Aylor* (1974), 162 Ind. 340, 319 N.E.2d 639, we discussed such an objection in a similar case. A police officer had been called to testify concerning his investigation of the scene of a motor vehicle accident. He indicated that the location of the collision can often be established by the presence of debris at the scene. The officer stated he found debris on the highway, to which counsel objected because it had not been established that the debris came from the vehicles involved. The trial court permitted the testimony giving the location of the debris. On appeal this court said:

"Where the relevance of an item of evidence is questioned on the basis of the sufficiency of the foundation that has been laid for its introduction, the trial judge is invested with sound judicial discretion, and the court's action in accepting or rejecting the item should only be reversed on appeal where a clear abuse of discretion is shown. *Storckman v. Keller* (1968), 143 Ind.App. 43, 237 N.E.2d 602. Our Supreme Court has traditionally held that admission of such evidence will be sustained so long as it has a tendency to prove a material fact, even though its tendency in that direction may be exceedingly slight. *Thomas v. State* (1968), 251 Ind. 76, 238 N.E.2d 20; *Smith v. State* (1937), 212 Ind. 605, 10 N.E.2d 899; *Deal v. State* (1894), 140 Ind. 354, 39 N.E. 930. Thus, in *Grossnickle v. Avery* (1926), 96 Ind. App. 479, 152 N.E. 288, a witness was permitted to describe skid marks he observed at the scene of an accident even though he had not seen the collision. From other evidence it was possible to infer the marks were made by the defendant's auto. On appeal, the court held the evidence was properly admitted, although its weight was, of course, to be determined by the jury. Similarly here,

the evidence established that defendant's parking light was broken in the collision, and that in examining the scene the police officer found glass debris. Of critical importance was where the collision occurred, since the essence of defendant's position was that plaintiff was engaged in entering the highway at the moment of collision. Certainly the weight to be given Billow's testimony on this point was subject to attack. However, we cannot say that the court abused its discretion in permitting the answer."

319 N.E.2d at 641 (footnotes omitted).

 In the present case the road conditions at the time of the accident were certainly of critical importance. While Hohman's testimony alone could not establish the road condition conclusively it certainly was relevant. The testimony concerns the road conditions only 25 minutes after the accident and can be compared with the testimony of Williams and Graber, *tending* to support Graber's testimony that the curve was icy over Williams' testimony that the road was only wet from the rain. The fact that Hohman was not present when the accident occurred goes to the weight to be accorded his testimony and not to its admissibility. *See Spears v. Aylor, supra; McClamroch v. McClamroch* (1985), Ind.App., 476 N.E.2d 514, 518 ("Relevancy is the logical tendency of evidence to prove a material fact."); *Indiana State Highway Commission v. Vanderbur* (1982), Ind.App., 432 N.E.2d 418, 422 ("Regarding admissibility, the question is not the weight of the evidence but its relevancy and competency. When evidence is relevant, it should be admitted, however little it seemingly tends to prove.") Since Williams has failed to show that the trial court abused its discretion in admitting Hohman's testimony, there is no reversible error.

*Issue Three*

 The trial court specifically found that:

"The evidence is undisputed that at the time of the collision the plaintiff was operating his motor vehicle at a speed of approximately 40 to 50 miles per hour, and that he was in the process of passing the defendant's motor vehicle on the left hand lane at a bank curve."

Williams contends on appeal that this finding was erroneous. However, as Williams did not specifically raise this error in his motion to correct errors it must be deemed waived on appeal. *Greenbrier Hills, Inc. v. Boes* (1985), Ind.App., 473 N.E.2d 1040, 1042; *Rosner v. Schacht* (1983), Ind.App., 452 N.E.2d 1079, 1082; *Wojcik v. Almase* (1983), Ind.App., 451 N.E.2d 336, 339–40, n. 2; *In re Estate of Williams* (1980), Ind. App., 398 N.E.2d 1368, 1371. *See also* Indiana Rules of Procedure, Trial Rule 59(D)(2):

"Each claimed error shall be stated in specific rather than general terms, and shall be accompanied by a statement of the facts and grounds upon which the errors are based."

Williams' motion to correct errors assigned the following error:

"4. The trial court erred in finding that the Plaintiff's excessive speed for the road conditions was a contributing factor to the accident in question."

We have also reviewed the memorandum Williams attached to his motion to correct errors and are unable to find any challenge to the specific finding that Williams was travelling between 40 and 50 miles per hour at the time of the collision.[4] When read together the assigned error and the memorandum in essence admit excessive speed for the road conditions challenging instead that Williams' speed for the road conditions was not the proximate cause, and was not relevant or sufficient evidence upon which to find contributory negligence. Therefore, Williams has waived any error as to the trial court's exact determination of his speed at the time of the collision.

■ In essence, Williams' third issue then is simply a challenge of the trial court's finding that he was contributorily negligent. In *Best v. Best* (1984), Ind.App., 470 N.E.2d 84, 86, we determined that: "[t]he judgment controls on any issue not covered by the special findings, T.R. 52(D), and will be upheld if sustainable on any theory, although we may not contradict any of the findings made by the trial court by affirming on grounds contrary to such findings." *See also Kizer v. Davis* (1977), 174 Ind.App. 559, 369 N.E.2d 439. There was no determination made by the trial court that Graber was negligent. We could sustain the trial court simply on the theory that the court believed Graber's testimony and concluded that he was not negligent in permitting his truck to slide over the center line. That conclusion is not inconsistent with the finding of Williams' contributory negligence. Therefore, even if the trial court had erred in finding that Williams' excessive speed for the road conditions contributed to the collision, the judgment is sustainable because there was no finding that Graber was negligent.

■ More importantly, the trial court's determination that Williams was contributorily negligent is supported by the evidence and reasonable inferences arising

---

**4.** The pertinent portion of Williams' memorandum stated:

"The Court has determined that the Plaintiff operated his motor vehicle at a speed excessive for the weather conditions then present. Plaintiff was able to maintain his motor vehicle in a lane of travel with no difficulty and it was not until the Defendant pulled into the Plaintiff's lane of travel, without warning, that the collision between the two vehicles occurred. The facts in this case are similar to the facts in *Wilfong v. Batdorf,* supra where the Ohio Supreme Court held that the overtaking or passing of a truck without giving an audible signal was not sufficient evidence as a matter of law that the driver of the passing vehicle was guilty of contributory negligence. In *Wilfong* it is clear that the proximate cause of the accident was the moving of the truck into the passing lane, causing a collision with the passing vehicle. In the present case, the Defendant Graber moved his vehicle into the passing lane causing a collision with the vehicle being driven by the Plaintiff Williams.

Therefore, the speed of the vehicle driven by the Plaintiff and the road conditions are not the proximate cause of the collision, are completely irrelevant, and are not sufficient evidence to render the Plaintiff guilty of contributory negligence as a matter of law."

therefrom. We will not reweigh the evidence or judge the credibility of the witnesses on appeal. We will only consider that evidence in the record and any reasonable inferences arising from such evidence which support the trial court's judgment. *Mishawaka Brass Mfg. Inc. v. Millwaukee Valve Co.* (1983), Ind.App., 444 N.E.2d 855, 857. The trial court's decree clearly based its finding of contributory negligence upon *three* things: "the testimony provided by the parties, the photographs introduced into evidence, and the court's belief that the plaintiff's excessive speed for the road conditions were a contributing factor to the accident...." Apart from the trial court's determination of Williams' specific speed, there was sufficient evidence in the form of testimony and photographs concerning the road conditions and surrounding circumstances to support the finding of contributory negligence (i.e., icy road, banked curve, construction in the area, reduced speed of other vehicle on the road, and attempting to pass under the circumstances).

Affirmed.

STATON, P.J., and HOFFMAN, J., concur.